# Exhibit 1

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16-CVS- 20211

---

Arcangela Mazzariello,

         **Plaintiff,**

   v.

**Atlantic Coast Waterproofing, Inc.,**
and
**Federico Jaramillo,** *individually,*

         **Defendants.**

**VERIFIED COMPLAINT**
**(Jury Trial Demanded)**

---

Plaintiff, **Arcangela Mazzariello**, hereby alleges and complains of the Defendants as follows:

### Parties, Jurisdiction and Venue

1.  This Honorable Court has jurisdiction over this matter pursuant to North Carolina General Statutes in that this is a civil action in which the amount in controversy exceeds twenty-five thousand dollars ($25,000.00).

2.  Venue is proper in Mecklenburg County because the events at issue took place in Mecklenburg County and Defendant Atlantic Coast Waterproofing, Inc. is located in Mecklenburg County.

3.  **Plaintiff, Arcangela Mazzariello ("Plaintiff")** is and was at all times relevant hereto, a citizen and resident of North Carolina.

4.  Plaintiff is a Caucasian female who is and was at all times relevant hereto, more than forty (40) years of age.

1

5.      Upon information and belief, **Defendant Federico Jaramillo ("Defendant Federico Jaramillo")**, is and was at all times pertinent to this action a resident of Mecklenburg County, North Carolina, although his citizenship is unknown to Plaintiff.

6.      **Defendant, Atlantic Coast Waterproofing, Inc. ("Atlantic Coast")**, is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business located at 2806 North Graham Street, Charlotte, North Carolina 28206.

## Factual Background

7.      In June 2014, Plaintiff started working at Atlantic Coast.

8.      Adan Jaramillo, then the sole owner and manager of Atlantic Coast, hired Plaintiff for the position of CEO.

9.      Initially, Plaintiff reported only to Adan Jaramillo, who was the "official" owner of the company.

10.     At the onset of Plaintiff's employment, Defendant Federico Jaramillo worked on job sites and reported to Plaintiff.

11.     Upon information and belief, Defendant Federico Jaramillo does not have legal residency in the United States and therefore was not listed as an "official" owner of the company.

12.     Plaintiff's duties as CEO included, but were not limited to:

(a)     Navigating an IRS audit of Defendant Atlantic Coast;

(b)     Managing day to day operations and needs of the business;

(c)     Making the company profitable;

(d)     Reducing financial waste; and

2

(e)     Bringing the company into compliance with local, State

and Federal laws and regulations.

13.     In order to bring the company into compliance with local building codes, Plaintiff orchestrated a move of Defendant Atlantic Coast's physical facility to 2806 North Graham Street, Charlotte, North Carolina, 28206.

14.     As a result of Plaintiff's efforts in reconciling Defendant Atlantic Coast's accounting, the company paid off all outstanding debt, collected on overdue invoices, reduced waste, and increased profits.

15.     Plaintiff completed Defendant Atlantic Coast's IRS audit.

16.     During her employment with Defendant Atlantic Coast, Plaintiff instituted various policies and procedures to protect Defendant's interests and streamline operations.

17.     Defendant Atlantic Coast became more profitable under Plaintiff's leadership.

18.     Adan Jaramillo acknowledged that Plaintiff was doing a great job and was helping turn around the company.

19.     The relationship between Plaintiff and Defendants began to sour when Plaintiff began the process of organizing and reconciling the company's financial records.

20.     Plaintiff discovered that Defendant Federico Jaramillo diverted company money to pay his personal expenses, including groceries for his family, gas for his wife's car, and restaurant meals for himself and his family on an almost daily basis.

21.     When confronted by Plaintiff about his misuse of company funds, Federico Jaramillo bragged that he took money from the company on a regular basis and told Plaintiff she was not smart enough to figure out how he was doing it.

22.     Over time, Defendant Federico Jaramillo assumed more authority within the

3

company and changed the organization structure so that Plaintiff reported to both Adan and Defendant Federico Jaramillo.

23. Defendant Federico Jaramillo made it well known to Plaintiff and others that he disliked her for many reasons, including but not limited to:

        (a)    Plaintiff's close audits of the company's financials which revealed that Federico Jaramillo was improperly converting company funds for personal use;

        (b)    Plaintiff's insistence on compliance with all local, State and Federal laws;

        (c)    Plaintiff's refusal to certify immigration compliance when workers, including potentially Federico Jaramillo, did not have appropriate legal status;

        (d)    Plaintiff's not being of Latin descent;

        (e)    Plaintiff's being "too old;" and

        (f)    Plaintiff's being a female in a mostly male industry.

24. On several occasions, Defendant Federico Jaramillo stormed into Plaintiff's office and banged on her desk, screaming in her face threats that he would do whatever he wanted.

25. During these confrontations, Defendant Federico Jaramillo would thrust his face so close to Plaintiff's that when he yelled at her, spit from his mouth would spatter her face.

26. These confrontations terrified Plaintiff, as Federico Jaramillo acted violently and out of control, causing Plaintiff to fear that Defendant Federico Jaramillo would cause bodily harm to her or her coworkers.

27. Plaintiff expressed her disapproval of this behavior directly to Defendant Federico

Jaramillo and he refused to stop.

28.     Subsequently, when Plaintiff complained about Defendant Federico Jaramillo's conduct to Adan Jaramillo, Adan told Plaintiff that Defendant Federico Jaramillo was now an owner and he could not control him.

29.     Adan Jaramillo also told Plaintiff that he has tried to protect her from Defendant Federico Jaramillo, but was worried Defendant Federico Jaramillo was going to fire her.

30.     Subsequent to the conversations detailed above, Plaintiff identified several outstanding unpaid invoices from Metromont Corporation among Defendant Atlantic Coast's financial records.

31.     Plaintiff inquired to Defendants whether there was a reason the company was letting these invoices remain unpaid without any collections efforts being initiated.

32.     Plaintiff was concerned that under the table dealings with Metromont Corporation were occurring and sought an explanation in order to protect the company.

33.     Defendants refused to discuss any part of the Metromont Corporation invoices.

34.     Additionally, Plaintiff's regular duties included completing all the necessary paperwork for Defendant Atlantic Coast to perform work on government facilities, including Andrews Air Force Base, Fort Meade, and various nuclear power plants.

35.     Defendant Atlantic Coast performed work at these facilities primarily through a third party, Tindall Corporation.

36.     In order for Defendant Atlantic Coast to qualify for these government contracts, Plaintiff had to verify that no illegal aliens owned any part of the company.

37.     Plaintiff contacted Adan Jaramillo repeatedly to report her concerns about providing this verification because she had doubts about the immigration status of Defendant

5

Federico Jaramillo.

38.    Defendants took no action to address Plaintiff's concerns regarding verification of immigration status; instead, Defendant Federico Jaramillo changed Plaintiff's job description and told her to go to the job sites and work there four days a week instead of in the office.

39.    On the job site, Plaintiff was one of only two Caucasian employees and one of only three female employees.

40.    On November 4, 2015, Plaintiff suffered an injury at work while helping another employee clean a floor mat.

41.    Plaintiff stepped outside to shake off the floor mat. When Plaintiff stepped back inside, rainwater on her shoes and/or the floor caused her to slip. Plaintiff fell to the ground, injuring her back, right hip, right knee, right leg, left wrist, left hand, head, and neck, generally.

42.    Two other Atlantic Coast employees, Delmi Vasquez and Stacy Williams, witnessed Plaintiff's fall, and a third employee, Lori Mason, heard the fall and ran into the room to check on Plaintiff.

43.    Immediately following her fall, Plaintiff instructed Stacy Williams to initiate a workers' compensation claim on her behalf.

44.    Defendants told Plaintiff that she could not file a worker's compensation claim because points would be assessed, but Plaintiff insisted she had to report her injury.

45.    Upon information and belief, Defendants previously sought to avoid having points assessed against Defendant Atlantic Coast by paying off an employee who suffered an injury on the job to prevent that employee from filing a worker's compensation claim.

46.    On November 16, 2015, Stacy Williams completed the North Carolina Industrial Commission ("NCIC") Form 19, Employer's Report of Employee's Injury, and provided it to the

6

workers' compensation carrier, Builders Mutual Insurance Company to initiate Plaintiff's claim.

47.    On November 24, 2016, Plaintiff went to see Adan Jaramillo and informed him that she could not allow Atlantic Coast to certify payroll because some employees did not have proper documentation establishing both employment authorization and identity, as required by 8 U.S.C. § 1324a(b).

48.    Plaintiff made the decision to refuse payroll certification when she discovered that some Atlantic Coast employees had multiple drivers' licenses and multiple Social Security cards, indicating possible forgery.

49.    Further, during the course of this same discussion, Plaintiff explained that she did not feel comfortable signing the affidavits required for Defendant Atlantic Coast to qualify for government contracts anymore because Defendant Federico Jaramillo had started functioning as an owner of the company and Plaintiff lacked documentation of his immigration status.

50.    Plaintiff believed that both certifying payroll and signing the affidavits for government contracts would be illegal because of the questionable immigration status of Defendant Federico Jaramillo and several Atlantic Coast employees.

51.    Defendant Federico Jaramillo told co-workers that Plaintiff would not succeed because she was too old and a "gringa."

52.    "Gringa" is a derogatory term used in Latin America or Spain to refer to a female foreigner, especially one of U.S. or British descent.

53.    This was not the first time Plaintiff had been called a "gringa" while at work for Defendant Atlantic Coast.

54.    Plaintiff expressed that she found this term offensive and asked Defendants not to refer to her in that way again.

7

55.     Despite Plaintiff's request, Defendants continued to use the term to insult her.

56.     The next day, November 25, 2015, just three weeks after Plaintiff's work injury and one day after Plaintiff requested her desire not to be referred to by a racially discriminatory term and her refusal to violate the law, Defendants terminated Plaintiff from her employment.

57.     When Adan Jaramillo discussed the termination with Plaintiff, he made it clear that he had no personal issues with Plaintiff, thought she was doing a good job, but that Defendant Federico Jaramillo overruled him and gave the order to terminate her employment.

58.     The only explanation Plaintiff received for her termination was that she made too much money.

59.     At the time Defendants terminated Plaintiff from her employment at Atlantic Coast, she was over forty (40) years of age.

60.     Upon information and belief, Defendants filled Plaintiff's position at Atlantic Coast with an individual more than ten (10) years younger than Plaintiff.

61.     Plaintiff continued to pursue her claim for Worker's Compensation, filing an NCIC Form 18 on December 3, 2015 and an amended NCIC Form 18 on February 17, 2016.

62.     As a result of her termination, Plaintiff filed a Retaliatory Employment Discrimination Act ("REDA") claim with the North Carolina Department of Labor.

63.     The North Carolina Department of Labor received Plaintiff's REDA claim on February 1, 2016.

64.     Due to a backlog of cases, the North Carolina Department of Labor could not investigate Plaintiff's REDA claim within ninety (90) days.

65.     On August 5, 2016, Plaintiff requested a right to sue letter regarding her REDA claim.

8

66.     On August 22, 2016, Plaintiff received a right to sue letter regarding her REDA claim. (See attached Exhibit "A").

67.     Plaintiff's race was a substantial factor in the Defendants' decision to terminate her employment.

68.     Plaintiff's refusal to violate the law was a substantial factor in the Defendants' decision to terminate her employment.

69.     Plaintiff's filing of a lawful and compensable claim for worker's compensation was a substantial factor in the Defendants' decision to terminate her employment.

70.     Plaintiff's age was a substantial factor in the Defendants' decision to terminate her employment.

71.     Plaintiff's sex was a substantial factor in the Defendants' decision to terminate her employment.

### First Cause of Action – Violation of North Carolina Retaliatory Employment Discrimination Act (NC REDA) (Defendant Atlantic Coast)

72.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

73.     Plaintiff exercised her right to engage in a protected activity, namely participating in the filing of a claim (NCIC Forms 18 and 19) which initiated a proceeding with respect to Chapter 97 of the North Carolina General Statutes (North Carolina Workers' Compensation Act), and by exercising other rights afforded by the North Carolina Workers Compensation Act, in violation of N.C. Gen. Stat. § 95-241(a).

74.     Plaintiff suffered an adverse employment action within the meaning of N.C. Gen. Stat. § 95-240(2) when Defendants terminated her.

9

75. Plaintiff's exercise of her rights under N.C. Gen. Stat. § 95-241(a) was a substantial factor in the Defendants' decision to terminate Plaintiff's employment.

76. Plaintiff has satisfied all of the procedural and administrative requirements of N.C. Gen. Stat. § 95-242, by filing a timely written charge with and receiving a "right to sue letter" from the North Carolina Department of Labor, and by filing this complaint within 90 days from the receipt of said letter. (See attached "right to sue" letter, Exhibit "A.")

77. As a proximate result of Defendants' violation of N.C. Gen. Stat. § 95-240 et seq., Plaintiff has suffered damages; *inter alia*, lost wages, lost benefits, other economic losses in excess in excess of twenty five thousand dollars ($25,000.00).

78. Defendants' termination of Plaintiff because of her exercise of her rights under the Workers Compensation Act was intentional and willful, within the meaning of N.C. Gen. Stat. § 95-243, such that Plaintiff is entitled to treble damages and the reasonable costs and expenses, including attorney's fees, of the Plaintiff in bringing an action pursuant to N.C. Gen. Stat. § 95-243.

## Second Cause of Action – Wrongful Discharge in Violation of Public Policy (WDPP)
### (Sex Discrimination)
### (Defendant Atlantic Coast)

79. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

80. Plaintiff's sex was a substantial factor in Defendants' decision to terminate Plaintiff's employment.

81. Plaintiff was satisfying Defendants' legitimate performance expectations.

82. The actions of Defendants set forth herein constitute wrongful discharge in violation of the public policy of the State of North Carolina prohibiting Plaintiff from being

10

discharged from her position on account of her sex, specifically, the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.2, *et seq.*

83. As a proximate result of Defendants' conduct, in this respect, Plaintiff has suffered damages, *inter alia*, lost wages, damage to reputation, mental distress, embarrassment, humiliation, and pain and suffering in excess of twenty five thousand dollars ($25,000.00).

### Third Cause of Action – Wrongful Discharge in Violation of Public Policy (WDPP)
### (Race Discrimination)
### (Defendant Atlantic Coast)

84. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

85. Plaintiff was satisfying Defendants' legitimate performance expectations.

86. Plaintiff's race was a significant factor in Defendants' decision to terminate Plaintiff's employment.

87. The actions of Defendants set forth herein constitute wrongful discharge in violation of the public policy of the State of North Carolina prohibiting Plaintiff from being discharged from her position on account of her race, specifically, the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.2, *et seq.*

88. As a proximate result of Defendants' conduct, in this respect, Plaintiff has suffered damages, *inter alia*, lost wages, damage to reputation, mental distress, embarrassment, humiliation, and pain and suffering in excess of twenty five thousand dollars ($25,000.00).

### Fourth Cause of Action – Wrongful Discharge in Violation of Public Policy (WDPP)
### (Age Discrimination)
### (Defendant Atlantic Coast)

89. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

11

90.     At the time of her termination, Plaintiff was over forty (40) years of age.

91.     Plaintiff was satisfying Defendants' legitimate performance expectations.

92.     Plaintiff's age was a substantial factor in the Defendants' decision to terminate Plaintiff's employment.

93.     Upon information and belief, Defendants replaced Plaintiff with someone more than ten (10) years younger than Plaintiff.

94.     The actions of Defendants set forth herein constitute wrongful discharge in violation of the public policy of the State of North Carolina prohibiting Plaintiff from being discharged from her position on account of her age, specifically, the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.2, *et seq.*

95.     As a proximate result of Defendants' conduct, in this respect, Plaintiff has suffered damages, *inter alia*, lost wages, damage to reputation, mental distress, embarrassment, humiliation, and pain and suffering in excess of twenty five thousand dollars ($25,000.00).

### Fifth Cause of Action – Wrongful Discharge in Violation of Public Policy Against Unlawfully Employing Illegal Aliens (WDPP) (Defendant Atlantic Coast)

96.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

97.     It is the law and public policy of North Carolina to enforce federal immigration laws to the fullest extent permitted by federal law.

98.     Defendants unlawfully employed undocumented workers in violation of 8 U.S.C. § 1324a and N.C.G.S. § 64-26 and attempted to procure government contracts by, upon information and belief, falsely certifying compliance with regulations related to citizenship and/or immigration.

12

99.   Plaintiff refused to participate in Defendants' unlawful activity when she stated that she would not certify payroll or sign affidavits that falsely represented Defendants' compliance with state and federal laws.

100.   Plaintiff's refusal to participate in Defendant's unlawful conduct was a substantial factor in Defendants' decision to terminate the Plaintiff.

101.   The actions of Defendants set forth herein constitute wrongful discharge in violation of the public policy of the State of North Carolina prohibiting Plaintiff from being discharged from her position for refusal to participate in conduct that was unlawful and/or against public policy.

102.   As a direct and proximate result of Defendants' conduct, in this respect, Plaintiff has suffered damages, *inter alia*, lost wages, damage to reputation, mental distress, embarrassment, humiliation, and pain and suffering in excess of twenty five thousand dollars ($25,000.00).

### Sixth Cause of Action – Punitive Damages
### (Defendant Atlantic Coast)

103.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

104.   As set forth herein, Defendant Atlantic Coast's actions, including but not limited to changing her job from office work to work on the job site as retaliation, indicate that when Defendants terminated Plaintiff her, they acted with a sense of personal ill will toward her, and/or with conscious and intentional disregard and indifference to the rights of the Plaintiff.

105.   The officers, directors, and/or managers of Defendant Atlantic Coast participated in or condoned the conduct constituting the aggravating factors giving rise to punitive damages.

106.   Pursuant to N.C.G.S. 1D, *et seq.*, Plaintiff contends that punitive damages are

13

required to punish Defendant Federico Jaramillo for his wrongful acts and to deter Defendant Atlantic Coast and others from committing similar wrongful acts.

107.    Under the circumstances of this case, in determining punitive damages, the Court should consider evidence that relates to the following:

(a)    The reprehensibility of Defendant Atlantic Coast's motives and conduct, including evidence of insult, indignity, malice, oppression, bad motive fraud, recklessness, wantonness, willful injury, or a wrongful act without a reasonable excuse;

(b)    The likelihood at the relevant time of serious harm to Plaintiff;

(c)    The degree of Defendant Atlantic Coast's awareness of the probable consequences of their conduct;

(d)    The duration of Defendant Atlantic Coast's conduct;

(e)    The actual damages suffered by Plaintiff;

(f)    Any concealment by Defendant Atlantic Coast of the facts or consequences of its conduct;

(g)    The existence and frequency of any similar past conduct by Defendant Atlantic Coast;

(h)    Whether Defendant Atlantic Coast profited by the conduct;

(i)    Defendant Atlantic Coast's ability to pay punitive damages as evidenced by its revenue or net worth.

108.    Due to the aforesaid wanton, reckless, intentional conduct of Defendant Atlantic Coast's, Plaintiff is entitled to punitive damage in such amount as the Court may deem just and

14

proper.

## Seventh Cause of Action – Intentional Infliction of Emotional Distress
### (Defendant Federico Jaramillo)

109.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

110.     Defendant Federico Jaramillo's conduct, including but not limited to yelling at Plaintiff so close that he spit in her face, referring to Plaintiff by derogatory terms, threatening Plaintiff with intentional acts such as banging on her desk to cause her to fear for her safety at work, was extreme and outrageous.

111.     Defendant Federico Jaramillo's conduct, as set forth herein, was, on information and belief, intended to, and in fact did cause severe emotional distress in the Plaintiff.

112.     As a proximate result of Defendant Federico Jaramillo's conduct, in this respect, Plaintiff suffered damages, *inter alia*, mental distress, and is entitled to damages in an amount to be determined at trial.

## Eighth Cause of Action – Assault
### (Defendant Federico Jaramillo)

113.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

114.     Defendant Federico Jaramillo intentionally displayed force and violence, threatening Plaintiff with imminent bodily injury by, among other things, storming into Plaintiff's office, banging on her desk, and screaming in her face.

115.     Defendant Federico Jaramillo's conduct, in this respect, caused Plaintiff to have a reasonable apprehension that Defendant Federico Jaramillo would make harmful and offensive contact with Plaintiff.

15

116.    As a proximate result of Defendant Federico Jaramillo's conduct, in this respect, Plaintiff suffered damages, *inter alia*, mental distress, and is entitled to damages in an amount to be determined at trial.

### Ninth Cause of Action – Battery
### (Defendant Federico Jaramillo)

117.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

118.    Upon information and belief, Defendant Federico Jaramillo, by screaming at Plaintiff with his face mere inches from hers, either intended to spit in Plaintiff's face or believed it was substantially likely that spit would hit Plaintiff's face.

119.    Having Defendant Federico Jaramillo's spit spatter on her face offended Plaintiff's reasonable sense of personal dignity.

120.    Plaintiff did not consent to Defendant Federico Jaramillo's causing his spit to hit her face.

121.    As a proximate result of Defendant Federico Jaramillo's conduct, in this respect, Plaintiff suffered damages, *inter alia*, mental distress, and is entitled to damages in an amount to be determined at trial.

### Tenth Cause of Action – Punitive Damages
### (Defendant Federico Jaramillo)

122.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

123.    As set forth herein, Defendant Federico Jaramillo's actions, including threatening Plaintiff, banging on her desk, causing spit to hit her face, screaming at her, calling her a derogatory name indicate that when he acted with a sense of personal ill will toward her, and/or

with conscious and intentional disregard and indifference to the rights of the Plaintiff.

124.    Pursuant to N.C.G.S. 1D, *et seq.*, Plaintiff contends that punitive damages are required to punish Defendant Federico Jaramillo for his wrongful acts and to deter Defendant and others from committing similar wrongful acts.

125.    Under the circumstances of this case, in determining punitive damages, the Court should consider evidence that relates to the following:

   (a)    The reprehensibility of Defendant Federico Jaramillo's motives and conduct, including evidence of insult, indignity, malice, oppression, bad motive fraud, recklessness, wantonness, willful injury, or a wrongful act without a reasonable excuse;

   (b)    The likelihood at the relevant time of serious harm to Plaintiff;

   (c)    The degree of Defendant Federico Jaramillo's awareness of the probable consequences of their conduct;

   (d)    The duration of Defendant Federico Jaramillo's conduct;

   (e)    The actual damages suffered by Plaintiff;

   (f)    Any concealment by Defendant Federico Jaramillo of the facts or consequences of their conduct;

   (g)    The existence and frequency of any similar past conduct by Defendant Federico Jaramillo;

   (h)    Whether Defendant Federico Jaramillo profited by the conduct;

   (i)    Defendant Federico Jaramillo's ability to pay punitive

damages as evidenced by his revenue or net worth.

126. Due to the aforesaid wanton, reckless, intentional conduct of Defendant Federico Jaramillo, Plaintiff is entitled to punitive damage in such amount as the Court may deem just and proper.

## Prayer for Relief

**WHEREFORE,** Plaintiff, Arcangela Mazzariello, prays the Court for the following relief:

1. For Plaintiff, compensatory damages, *inter alia*, lost wages, lost benefits, emotional and physical pain, loss of enjoyment of life, damage to reputation, deterioration of health, pain, suffering and other irreparable injury in excess of twenty-five thousand dollars ($25,000.00) of and from the Defendants jointly and severally as their liabilities may appear;

2. That the Court treble the damages awarded by the jury for compensatory damages attributable to Plaintiff's damages under N.C. Gen. Stat. § 95-240 *et seq.*, on account of Defendant Atlantic Coast's willful violation, pursuant to N.C. Gen. Stat. § 95-243(c);

3. For punitive damages against Defendant Atlantic Coast, as may be awarded by a jury, under both the common law and Constitutional law of the State of North Carolina, and pursuant to N.C. Gen. Stat. § 1D-1 et seq., as allowed by law in such amount as may be determined in the discretion of the jury;

4. For punitive damages against Defendant Federico Jaramillo, as may be awarded by a jury, under both the common law and Constitutional law of the State of North Carolina, and pursuant to N.C. Gen. Stat. § 1D-1 et seq., as allowed by law in such amount as may be determined in the discretion of the jury;

5. That the Court permanently enjoin the Defendants from violating the provisions

of N.C. Gen. Stat. § 95-241(a);

6.     That Plaintiff recover from the Defendants reasonable costs and expenses, including attorney fees, in bringing this action, pursuant to N.C. Gen. Stat. § 95-243(c);

7.     For pre-judgment and post-judgment interest on all amounts found due to Plaintiff at the legal rate;

8.     For a trial by jury on all triable issues; and

9.     For such further and additional relief at law and equity as the Court may deem just and proper.

THIS THE ___7th___ DAY OF NOVEMBER, 2016.

SEIFERFLATOW, PLLC

By: _____
MATHEW E. FLATOW
NC State Bar No. 35282

By: _____
ELIZABETH K. VENNUM
NC State Bar No. 49747
Attorneys for Plaintiff Arcangela
Mazzariello
2319 Crescent Avenue
Charlotte, North Carolina 28207
(704) 512 0606

19

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16-CVS-_____

Arcangela Mazzariello,

Plaintiff,

v.

Atlantic Coast Waterproofing, Inc.,
~~Adan Jaramillo,~~ /MF
and
Federico Jaramillo, individually /MF

Defendants.

**VERIFICATION OF COMPLAINT**

    I, Arcangela Mazzariello, being first duly sworn, deposes and says that I have read the foregoing COMPLAINT initiating this matter before the Superior Court in Mecklenburg County and know the contents thereof, and that the same is true and correct to the best of my knowledge, except as to those matters and things alleged upon information and belief, and, as to those things, I believe them to be true.

                                                        Arcangela Mazzariello

Mecklenburg County, North Carolina

Signed and sworn to before me this day by Arcangela Mazzariello
                                          (name of principal)

Date: 11/1/16     Mary Elizabeth McKenzan
                    NOTARY PUBLIC

(Official seal)         My Commission Expires: 8/4/2019

20



**NCDOL**
N.C. Department of Labor

August 17, 2016

Arcangela Mazzariello
c/o SeiferFlatow, PLLC
2319 Crescent Avenue
Charlotte NC 28207

FILE: 030-16
COMPLAINANT: Arcangela Mazzariello
RESPONDENT: Atlantic Coast Waterproofing, Inc.

Dear Ms. Mazzariello,

By letter dated 8-5-16, you requested that the Employment Discrimination Bureau (EDB) provide you with a Right-To-Sue letter in the above-captioned case.

Your request meets the requirements set forth in the Retaliatory Employment Discrimination Act (REDA) in that more than 90 days have passed since the date you filed your complaint, the Commissioner of Labor has not issued a notice of conciliation failure and has not commenced an action pursuant to §G. S. 95-242.

Your request for a right-to-sue letter to be issued has been reviewed and approved. **This is your right-to-sue letter.** It is issued at your request. If you intend to pursue a law suit, **you must file a civil action within ninety (90) days of the date of this letter** otherwise your right to sue under the provisions of REDA is lost. You may want to consult with a private attorney regarding the legal requirements for filing a civil action. Please notify the Employment Discrimination Bureau (EDB) if you file a civil action in this matter.

With the issuance of the right-to-sue letter, the EDB ends it processing of your complaint and no further investigation will be conducted. Your case is closed as of the date of this letter. A copy of the right-to-sue letter has been provided to the Respondent.

On behalf of the Commissioner of Labor,

*Ellen Allbritton*
*Discrimination Investigator*

cc: File
    Respondent

North Carolina Department of Labor
Employment Discrimination Bureau
1101 Mail Service Center, Raleigh, North Carolina 27699-1101



PLAINTIFF'S
EXHIBIT

A

NO. _____

# STATE OF NORTH CAROLINA

_____ Mecklenburg _____ County

File No. 16 CVS 2021

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| **Name Of Plaintiff**<br>Arcangela Mazzariello | **CIVIL SUMMONS**<br>☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| **Address**<br>2319 Crescent Avenue | |
| **City, State, Zip**<br>Charlotte          NC          28207 | G.S. 1A-1, Rules 3 and 4 |
| **VERSUS** | |
| **Name Of Defendant(s)**<br>Atlantic Coast Waterproofing, Inc.,<br>and<br><br>Federico Jaramillo | **Date Original Summons Issued**<br><br>**Date(s) Subsequent Summons(es) Issued** |

## To Each Of The Defendant(s) Named Below:

| | |
|---|---|
| **Name And Address Of Defendant 1**<br>Federico Jaramillo<br>3110 Sheets Circle Drive<br>Charlotte, NC 28214 | **Name And Address Of Defendant 2** |

### A Civil Action Has Been Commenced Against You!

You are notified to appear, answer the Complaint, and respond to the Discovery of the Plaintiff as follows:

1. Serve a copy of your written answers to the Complaint and Discovery on Paintiff's attorney within thirty (30) days after you have been served. You may serve your answer by mailing a copy to the Plaintiff's attorney; and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| | |
|---|---|
| **Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)**<br>Mathew Flatow<br>SeiferFlatow, PLLC<br>2319 Crescent Avenue<br>Charlotte, NC 28207 | **Date Issued** 11/07/U   **Time** 1:35  ☐ AM ☐ PM<br>**Signature**<br><br>☐ Deputy CSC      ☐ Assistant CSC      ☐ Clerk Of Superior Court |

| | |
|---|---|
| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | **Date Of Endorsement**     **Time**<br>                    ☐ AM ☐ PM<br>**Signature**<br><br>☐ Deputy CSC      ☐ Assistant CSC      ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** _Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts