IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:16-CV-835-RJC-DCK

| | |
|---|---|
| ARCANGELA MAZZARIELLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| ATLANTIC COAST WATERPROOFING, ) | |
| INC.; and FEDERICO JARAMILLO, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant Federico Jaramillo's Renewed Motion To Dismiss" (Document No. 15). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Arcangela Mazzariello ("Plaintiff") initiated this action with the filing of a "Verified Complaint" (Document No. 1-1) (the "Complaint") in the Superior Court of Mecklenburg County, North Carolina, Case No. 16-CVS-20211, on November 7, 2016. "Defendant's Notice Of Removal" (Document No. 1) was filed by Defendant Atlantic Coast Waterproofing, Inc. ("Atlantic Coast") on December 8, 2016. On December 15, 2016, Defendant Atlantic Coast filed its "Answer And Affirmative Defenses" (Document No. 6). Then on December 20, 2016, the Court allowed "Defendant Federico Jaramillo's Consent Motion To Stay Initial Attorney's Conference" (Document No. 8). See (Document No. 9).

On January 13, 2017, both Plaintiff's "Motion For Leave To Amend Complaint" (Document No. 10) and "Defendant Federico Jaramillo's Motion To Dismiss" (Document No. 11) were filed with the Court. The undersigned issued an "Order And Recommendation" (Document No. 13) on January 18, 2017, ordering that Plaintiff's "Motion For Leave To Amend Complaint" (Document No. 10) be granted and recommending that "Defendant Federico Jaramillo's Motion To Dismiss" (Document No. 11) be denied as moot. Neither party filed an objection to the "Order And Recommendation" (Document No. 13), and the time to do so has lapsed. Plaintiff immediately filed her "Amended Complaint" (Document No. 14) on January 18, 2017.

The Amended Complaint asserts causes of action against Atlantic Coast for: (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII"); (2) sex discrimination in violation of Title VII; (3) age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"); (4) violation of North Carolina Retaliatory Employment Discrimination Act ("NC REDA"); (5) wrongful discharge in violation of public policy (sex discrimination); (6) wrongful discharge in violation of public policy (race discrimination); (7) wrongful discharge in violation of public policy (age discrimination); (8) wrongful discharge in violation of public policy against employing illegal aliens; and (9) punitive damages under North Carolina common law. (Document No. 14, pp.12-20). In addition, the Amended Complaint asserts causes of action against Defendant Federico Jaramillo ("Jaramillo"), individually, for: (1) intentional infliction of emotional distress ("IIED"); (2) assault; (3) battery; and (4) punitive damages under North Carolina common law. (Document No. 14, pp.20-23).

"Defendant Federico Jaramillo's Renewed Motion To Dismiss" (Document No. 15) and "Memorandum Of Law In Support…" were filed on January 18, 2017. Defendant Jaramillo seeks

dismissal of all Plaintiff's claims against him pursuant to Fed.R.Civ.P. 12(b)(6). See (Document Nos. 15 and 16). "Plaintiff's Memorandum Of Law In Response…" (Document No. 20) was filed February 7, 2017; and "Defendant Federico Jaramillo's Reply In Support…" (Document No. 21) was filed on February 14, 2017. The pending motion is now ripe for review and a recommendation to the Honorable Robert J. Conrad, Jr.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

3

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

Defendant Jaramillo asserts that Plaintiff relies on the same set of facts for each of her claims against him, and that these facts are legally insufficient to support claims for IIED, assault, or battery under North Carolina law. (Document No. 16, pp.3-5). Defendant contends that those relevant factual allegations are found in four (4) paragraphs of the Amended Complaint that focus on confrontations where Jaramillo allegedly terrified Plaintiff by storming into her office, banging on her desk, and/or screaming at her in a way that caused spit to fly in Plaintiff's face. (Document No. 16, p.3) (citing Document No. 14, ¶¶ 32, 33, 34 and 35). Jaramillo further asserts that Plaintiff's "punitive damages" claim cannot exist as an independent cause of action. (Document No. 16, p.4, n.3).

The undersigned will address each cause of action against Jaramillo in turn.

**A.**  **Intentional Infliction of Emotional Distress**

Jaramillo first argues that Plaintiff has not alleged the type of "extreme and outrageous conduct" or "severe emotional distress" necessary to sustain a claim for IIED. (Document No. 16, p.5). The parties appear to agree on the applicable standards for an IIED claim as set forth below. See (Document No. 16, pp.5-7; Document No. 20, pp.4-6).

To prevail on a claim for IIED a plaintiff must show:

4

> "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." *Waddle v. Sparks,* 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (quoting *Dickens v. Puryear,* 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)). Under North Carolina law, conduct is extreme and outrageous only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.,* 79 N.C.App. 483, 493, 340 S.E.2d 116, 123 (1986) (internal quotation omitted). Whether conduct meets this standard is a question of law. *Lenins v. K–Mart Corp.,* 98 N.C.App. 590, 599, 391 S.E.2d 843, 848 (1990).

Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 544-45 (E.D.N.C. 2008); see also, Tompkins v. Charlotte-Mecklenburg School System, 3:16-CV-152-RJC-DSC, 2016 WL 5868086, at *2 (W.D.N.C. Oct. 6, 2016) adopted by 2016 WL 6780339 (W.D.N.C. Nov. 15, 2016); and Ortiz v. Big Bear Events, LLC, 3:12-CV-341-RJC-DCK, 2013 WL 247444, at *4 (W.D.N.C. Jan. 23, 2013).

> "North Carolina courts have been extremely reluctant to find actionable IIED claims in the employment context...." *Efird,* 342 F.Supp.2d at 427; *see, e.g., Hogan,* 79 N.C.App. at 493–94, 340 S.E.2d at 122–23 (finding no extreme or outrageous conduct where a supervisor screamed at employees, called them names, cursed at them, disrupted their work, threw menus at them, refused to grant pregnancy leave, and terminated an employee who left work due to labor pains). In cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene language, and inappropriate touching.

Id. See Dunkin v. Marshall Air Systems, Inc., 3:14-CV-110-FDW-DSC, 2014 WL 4407043, at *3 (W.D.N.C. Sept. 5, 2014) ("In the context of employment discrimination claims, North Carolina courts have been reluctant to find actionable intentional infliction of emotional distress claims."); Gauthier v. Shaw Group, Inc., 3:12-CV-274-GCM, 2012 WL 6043012 at *7 (W.D.N.C. Dec. 4, 2012) ("Mere insults, indignities, and threats do not constitute extreme and outrageous conduct because plaintiffs must necessarily be expected and required to be hardened to a certain amount of

5

rough language, and to occasional acts that are definitely inconsiderate or unkind."); and McKenna v. Schauer, 2009 WL 959869, at *5 (M.D.Pa. Apr. 6, 2009) ("the screaming and alleged spitting only amounted to insults and indignities, and not conduct sufficiently outrageous to support an IIED claim . . . even if Schauer pointed his firearm at the Plaintiff during the arrest, the conduct is not sufficiently outrageous to support an IIED claim").

Finally, this Court has noted that "[s]evere emotional distress means 'any ... type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.'" Tompkins, 2016 WL 5868086, at *2 (quoting Waddle, 331 N.C. at 83) (quoting Johnson v. Ruark Obstetrics & Gynecology Assoc., 327 N.C. 283, 304 (1991)).

Defendant Jaramillo argues that Plaintiff's allegations do not support findings of "extreme and outrageous conduct" or "severe emotional distress." (Document No. 16, pp.6-8). Jaramillo contends that cases with far more severe facts than those alleged here have had IIED claims dismissed at the Rule 12 stage. (Document No. 116, pp.6-7) (quoting Hogan, 79 N.C.App. at 494) ("standard was not met where the pregnant plaintiff's supervisor 'screamed and shouted at her, called her names, interfered with her supervision of waitresses under her charge, . . . threw menus at her,' directed her to carry heavy objects, and denied her requests for pregnancy leave and to leave work to visit a hospital") and (quoting Johnson v. Bollinger, 86 N.C.App. 1, 3 (1987) (defendant "approached plaintiff . . . in an angry, hostile and threatening manner" . . . "shook his hand in the plaintiff's face and said in a loud, rude and offensive manner . . ., 'You are a stupid son-of-a-bitch,' and 'You are a liar,' and stated further 'I will get you.'").

Jaramillo argues that here, as in Hogan and Johnson, Plaintiff has not alleged sufficient facts for a plausible IIED claim. (Document No. 16, p.7). In fact, Jaramillo contends that the facts

6

here indicate treatment that is far less severe than those in other cases where IIED claims have been dismissed.  Id.

Jaramillo further argues that the Amended Complaint is devoid of facts supporting the element of "severe emotional distress."  (Document No. 16, p.8).  Jaramillo concludes that Plaintiff's allegation of severe emotional distress relies on labels and conclusions that are insufficient for her claim to survive a Rule 12 motion.  Id. (citing Twombly, 129 S.Ct. at 1965) and Satterwhite v. Wal-Mart Stores East, L.P., 2012 WL 255347, at *5-6 (E.D.N.C. Jan. 26, 2012)).  In considering this issue, the undersigned finds the Satterwhite decision to be instructive:

> To show severe emotional distress, a plaintiff must "do more than simply state that he has suffered severe emotional distress;  there must be evidence that he has suffered from an emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *May v. City of Durham,* 136 N.C.App. 578, 525 S.E.2d 223, 230 (N.C.Ct.App.2000) (internal quotations omitted).  Although an actual diagnosis by medical professionals is not always required or necessary, *Soderlund v. Kuch,* 143 N.C.App. 361, 546 S.E.2d 632, 639 (N.C.Ct.App.2001), mere temporary fright, disappointment, or regret will not suffice to satisfy the element of severe emotional distress.

Satterwhite v. Wal-Mart Stores, 2012 WL 255347, at *5.  See also Tompkins, 2016 WL 5868086, at *3) ("Plaintiff has also failed to allege that her daughter suffered severe emotional distress as defined by the case law. Although Plaintiff alleges that her daughter was hospitalized with suicidal thoughts, she has not alleged what diagnoses were made, what treatment resulted, or what symptoms, if any, remain.").

In response to Defendant Jaramillo's motion, Plaintiff argues that the Amended Complaint pleads facts sufficient to meet the first two elements of a claim for IIED."  (Document No. 20, p.6) (citing Document No. 14, ¶¶ 27-37).  Plaintiff asserts that "[n]o decent society would allow for a

7

workplace in which a supervisor could burst into an employee's office without warning and bang on her desk, screaming and spitting in her face while he threatened her." Id.

Plaintiff further argues that the Amended Complaint adequately states a claim for severe emotional distress because Jaramillo's conduct terrified her and caused her ongoing fear for her safety and that of her coworkers. (Document No. 20, pp.6-7) (citing Document No. 14, ¶ 34).

In reply, Jaramillo notes that Plaintiff admits in the response that "'North Carolina courts have been extremely reluctant to find actionable IIED claims in the employment context[.]'" (Document No. 21, p.2) (quoting Document No. 20, p.5) (quoting Bratcher 545 F. Supp. 2d at 544–45). Jaramillo also states that he agrees with Plaintiff's citation to Gauthier, which correctly states that "extreme and outrageous conduct in an employment context [] typically involve[s] sexual advances, obscene language, and inappropriate touching." Id. (citing Document No. 20, p.5) (citing Gauthier v. Shaw Group, Inc., 2012 WL 6043012 at *7). Jaramillo concludes that the caselaw overwhelmingly refutes Plaintiff's contention that she has stated a sufficient claim for IIED. (Document No. 21, pp.3-5).

The undersigned finds Defendant Jaramillo's arguments and authority to be most persuasive. As rude, boorish, and wholly inappropriate as Jaramillo's conduct appears to have been, it does not meet the standard of extreme and outrageous conduct identified in the caselaw cited by the parties and the Court. See (Document No. 14, p.7); see also, Ortiz v. Big Bear Events, LLC, 2013 WL 247444, at *4. In addition, although Plaintiff makes some effort to distinguish the cases cited by Jaramillo, she makes little, if any, effort to identify cases with facts similar to the ones presented here, that have survived Rule 12 dismissal. (Document No. 20). Moreover, the threadbare allegation regarding the element of severe emotional distress is insufficient to support a plausible claim of IIED. Id.; see also, Iqbal, 556 U.S. at 678. Plaintiff has not alleged sufficient

factual content to suggest she has suffered an emotional or mental disorder as a result of Jaramillo's actions, or anything more than temporary fright. See Satterwhite, 2012 WL 255347, at *5.

Based on the foregoing, the undersigned will recommend that Jaramillo's motion to dismiss Plaintiff's IIED claim be granted.

**B.     Battery**

Next, Defendant Jaramillo argues that Plaintiff's allegation that "when he yelled at her, spit from his mouth would spatter her face" is "woefully insufficient to state a plausible claim of battery in North Carolina." (Document No. 16, p.8); see also (Document No. 14, ¶ 34). Jaramillo notes that "[t]he elements of battery are intent, harmful or offensive contact, causation, and lack of privilege." (Document No. 16, pp.8-9) (citing Hawkins v. Hawkins, 101 N.C.App. 529, 533 (1991). Jaramillo contends that the "keystone of a battery claim is intent: '[L]iability for the intentional tort of battery hinges on the defendant's intent to cause a harmful or offensive contact.'" (Document No. 16, p.8) (quoting Andrews v. Peters, 75 N.C.App. 252, 256 (1985)).

According to Jaramillo, the Amended Complaint makes clear that he did not intentionally spit at Plaintiff, but that "spit spatter" inadvertently landed on her face when he was yelling. (Document No. 16, p.9) (citing Document No. 14, ¶¶ 33 and 149).[1] Jaramillo contends there is no North Carolina caselaw addressing this issue, but that courts in other jurisdictions have routinely held that "errant spittle" is legally insufficient to sustain a cause of action for battery. Id. (citations omitted). Jaramillo concludes that the battery claim must be dismissed because lack of intentional conduct negates the claim. (Document No. 16, p.10).

---

[1] Notably, Jaramillo omits any reference to ¶ 148, which alleges that "Defendant Federico Jaramillo, by screaming at Plaintiff with his face mere inches from hers, either **intended to spit in Plaintiff's face or believed it was substantially likely that spit would hit Plaintiff's face**." (Document No. 14, p.21) (emphasis added).

9

In response, Plaintiff argues that Jaramillo misreads the Amended Complaint with respect to intent. (Document No. 20, p.7). Plaintiff contends that the "Amended Complaint sets forth facts supporting that Defendant Jaramillo intentionally or with gross or culpable negligence caused his spit to spatter Plaintiff's face by thrusting his face close to hers while he yelled threats at her." Id. (citing Document No. 14, ¶¶ 32-33). Plaintiff further notes that there is no statement in the Amended Complaint that Jaramillo's conduct was "inadvertent." (Document No. 20, p.8). Plaintiff asserts that taken as true, the Amended Complaint does set forth that Jaramillo "conducted these bullying sessions on multiple occasions, thrusting his face close to Plaintiff's as he yelled at her with the intent to cause spit to hit her face or knowing it was substantially likely that spit would hit her face." Id. (citing Document No. 14, ¶¶ 32-33, 147-151).

Plaintiff concurs with the elements of the claim as set forth by Jaramillo, but adds that a "defendant need not have hostile intent to harm the plaintiff, rather 'the intent required for battery may be supplied by grossly or culpably negligent conduct.'" (Document No. 20, p.7) (quoting Lynn v Burnette, 138 N.C.App. 435,439-40 (2000) (quoting Jenkins v. Averett, 424 F.2d 1228, 1231 (4th Cir.1970)). The Lynn v. Burnette decision further states that a "battery occurs when the plaintiff is offensively touched against the plaintiff's will," and that "the issue in an action for battery is not the hostile intent of the defendant, but rather the absence of consent to contact on the part of the plaintiff." Lynn, 138 N.C.App at 439; see also, Arch Specialty Ins. Co. v. Hedrick, 2014 WL 6627039, at *6 (M.D.N.C. Nov. 21, 2014).

Plaintiff's response also effectively addresses Jaramillo's citation to Harrington v. Rush, 2009 WL 1616010 (E.D.Ark. 2009). (Document No. 20, p.9). Jaramillo cites Harrington v. Rush as authority supporting a finding that where there is not intentional touching, there is no battery. (Document No. 16, pp.9-10). However, as noted by Plaintiff, the Harrington court opined that

10

even though the "Plaintiff's own description of the events attributes the spit on his face to the nearness of Defendant's face to his, not an intentional act of spitting," - "the tort of battery may encompass the acts described in this lawsuit and might be properly pursued in state court." Harrington v. Rush, 2009 WL 1616010, at *2 (emphasis added). The Harrington court then determined that "the act of spraying spittle on Plaintiff while yelling in his face is not an "actual injury" *sufficient to support an excessive force claim* under the Fourth Amendment." Id. (emphasis added).

Plaintiff concludes that since the Amended Complaint alleges that Jaramillo acted intentionally when causing spit to spatter Plaintiff's face, she has stated a plausible claim for battery. (Document No. 20, p.9).

In reply, Defendant Jaramillo suggests that Plaintiff's argument in response "borders on the absurd" because its application would mean that "every person who was yelled at from a close distance and who had spittle hit their face as a result would have a cognizable battery claim." (Document No. 21, pp.5-6).

The undersigned respectfully disagrees with Defendant Jaramillo, who seems to ignore the fact that Plaintiff has alleged that Jaramillo "*intended* to spit in Plaintiff's face or believed it was substantially likely that spit would hit her face." (Document No. 14, p.21) (emphasis added). The undersigned finds this issue to be a close call, with much of the caselaw discussed above suggesting that there may be a cognizable claim for battery based on the alleged facts. Under the circumstances, the undersigned will recommend that dismissal of this claim be denied at this stage, without prejudice to Defendant re-asserting similar arguments at the summary judgment stage after further development of the record and further review of relevant authority. The undersigned is

satisfied that Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 697.

**C.     Assault**

On similar grounds, Defendant Jaramillo also seeks dismissal of Plaintiff's claim for assault. (Document No. 16, pp.10-11).

> "The elements of assault are intent, offer of injury, reasonable apprehension, apparent ability, and imminent threat of injury." *Hawkins v. Hawkins,* 101 N.C.App. 529, 533, 400 S.E.2d 472, 475, *disc. review allowed,* 329 N.C. 496, 407 S.E.2d 533 (1991) (citation omitted). "The gist of an action for assault is apprehension of harmful or offensive contact." *Morrow v. Kings Department Stores, Inc.,* 57 N.C.App. 13, 19, 290 S.E.2d 732, 736, *disc. review denied,* 306 N.C. 385, 294 S.E.2d 210 (1982).

Wilson By & Through Wilson v. Bellamy, 105 N.C. App. 446, 465 (1992). In examining a cause of action for assault, this Court recently noted that:

> North Carolina looks to the common law for the definition of the intentional tort of assault.
>
> > North Carolina follows common law principles governing assault and battery. An assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow. The interest protected by the action for battery is freedom from intentional and unpermitted contact with one's person; the interest protected by the action for assault is freedom from apprehension of a harmful or offensive contact with one's person.

Hensley v. Suttles, 1:14-CV-193-MR-DLH, 167 F. Supp. 3d 753, 764 (W.D.N.C. 2016) (quoting Dickens v. Puryear, 302 N.C. 437, 445, 276 S.E.2d 325, 330 (1981)).

According to Jaramillo, "Plaintiff's allegations come nowhere close to meeting the standard for actionable assault under North Carolina law." (Document No. 16, p.11). Jaramillo contends that Plaintiff has not alleged that he "displayed an offer of violence or attempted to harm

12

her physically, as needed to sustain a cause of action for assault." Id. (citing Boggess v. Roper, 3:04-CV-092-RJC, 2006 WL 2569206, at *13 (W.D.N.C. Sept. 1, 2006)).

In Boggess, this Court held in a *summary judgment* ruling that "[e]ven if [plaintiff] was reasonably placed in fear by [defendant]'s actions, [defendant] is not liable for assault without proof of 'the intent to cause apprehension of an imminent offensive or harmful contact without actually striking [her]." Boggess, 2006 WL 2569206, at *13 (quoting Britt v. Hayes, 541 S.E.2d 761, 762 (N.C.App. 2001). The Boggess decision further states that even though plaintiff had described the defendant as "slamming his hand down and saying, "Damn it, Carrie, that's not what I told you to say," none of the "alleged incidents was coupled with a threat or attempt to harm [plaintiff] physically," and therefore, "the evidence fails to establish a material issue of the elements of assault and summary judgment is granted on her claim that [defendant] intentionally caused her to fear imminent harmful or offensive contact." Id.

In response, Plaintiff argues that the allegations here do give rise to a plausible claim for assault. (Document No. 20, p.9). Plaintiff acknowledges that "[b]y itself a verbal threat will not ordinarily give rise to a claim for assault; however 'words …together with other acts or circumstances [that] put the [plaintiff] in reasonable apprehension of an imminent or harmful contact' will create liability for assault." (Document No. 20, p.10) (quoting Dickens, 276 S.E.3d at 331). Plaintiff contends that she had a reasonable apprehension of imminent harmful or offensive contact, and that her allegations support a claim of assault.

As Plaintiff notes, she specifically alleged that "Jaramillo acted violently and out of control, causing Plaintiff to fear that Defendant Federico Jaramillo would cause bodily harm to her or her coworkers." (Document No. 20, pp.10-11) (quoting Document No. 14, ¶ 34). She contends that he acted intentionally in storming into her office and banging on her desk, and threatening that "he

13

could do whatever he wanted to do." (Document No. 20, p.11); see also, (Document No. 14, p.7). Plaintiff further asserts that Jaramillo's argument for dismissal of the "assault claim relies on non-precedential legal standards from other jurisdictions and applies North Carolina legal standards from factually incongruent cases." Id.

In reply, Jaramillo argues that Plaintiff has failed to adequately distinguish Boggess from the instant case and that the "fact remains that banging on a desk in the presence of an employee does not amount to assault in North Carolina, absent the requisite 'offer or attempt to show violence.'" (Document No. 21, p.8) (quoting Haynes v. Sentry Corp., 2000 WL 33682678, at *2 (E.D.N.C. Apr. 4, 2000). Jaramillo contends that "Plaintiff does not allege that Defendant Jaramillo threatened or attempted to harm her physically, as needed to sustain a cause of action for assault." Id.

The undersigned observes that what Plaintiff did allege in most pertinent part is that: Jaramillo "scream[ed] in her face threats that he would do whatever he wanted;" "when he yelled at her, spit from his mouth would spatter her face;" "Jaramillo acted violently and out of control, causing Plaintiff to fear that [he] would cause bodily harm to her or her coworkers;" and "Jaramillo intentionally displayed force and violence, threatening Plaintiff with imminent bodily injury." (Document No. 14, pp.7, 21).

The undersigned is persuaded that at this stage of the litigation, as with her battery claim, Plaintiff has alleged sufficient factual content to state a plausible claim for assault and thus, to survive dismissal. In short, the Amended Complaint describes Plaintiff's "apprehension of harmful or offensive contact" based on violent and threatening behavior by Jaramillo, and alleges that she in fact suffered the "offensive contact" of his spittle on her face. (Document No. 14). As

14

such, the undersigned will also recommend that Jaramillo's motion to dismiss the assault claim be denied.

### D. Punitive Damages

Finally, Jaramillo's motion argues that Plaintiff's stand-alone claim for punitive damages should be dismissed because North Carolina does not recognize such a separate claim. (Document No. 16, p.2). Jaramillo states in a footnote:

> Though Plaintiff purports to assert a separate cause of action for "punitive damages" against Defendant Jaramillo, under North Carolina law, "punitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it. If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." *Hawkins v. Hawkins*, 400 S.E.2d 472, 474 (N.C. Ct. App. 1991).

(Document No. 16, p.4, n.3).

In response, Plaintiff argues that she "does not purport to state a 'stand-alone claim for punitive damages' as Defendant Jaramillo contends." (Document No. 20, p.14). Plaintiff then asserts that her three claims against Jaramillo all support punitive damages when accompanied by aggravation, and that she has alleged such aggravating circumstances. Id. (citing Document No. 14, pp.29-37).

The undersigned observes that the Amended Complaint includes a "Thirteenth Cause Of Action" against Jaramillo for "Punitive Damages under North Carolina Common Law," just as it asserts against Defendant Atlantic Coast in the "Ninth Cause Of Action." (Document No. 14, pp.19-20, 22-23). As a result, it does appear that Plaintiff attempts to allege an independent, or stand-alone cause of action for punitive damages.

Based on Plaintiff's response, it may be that asserting punitive damages as independent causes of action was a scrivener's error. (Document No. 20, p.14). Nevertheless, the undersigned

15

Case 3:16-cv-00835-RJC-DCK   Document 22   Filed 05/19/17   Page 15 of 16

will recommend that the motion to dismiss be <u>granted</u> as to the "Thirteenth Cause Of Action" against Jaramillo for "Punitive Damages under North Carolina Common Law," without prejudice to Plaintiff seeking punitive damages at a later date, if appropriate.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant Federico Jaramillo's Renewed Motion To Dismiss" (Document No. 15) be **GRANTED** in part and **DENIED** in part, as discussed herein.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  <u>Diamond</u>, 416 F.3d at 316;  <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  <u>Snyder v. Ridenhour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989);  <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: May 18, 2017

_____
David C. Keesler
United States Magistrate Judge