# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:16-CV-00835-RJC-DCK

| | |
|---|---|
| ARCANGELA MAZZARIELLO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ATLANTIC COAST ) <br> WATERPROOFING, INC., and ) <br> FEDERICO JARMILLO, ) <br> ) <br> Defendants. ) <br> ) | **ORDER** |

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss, (Doc. No. 15), and the related pleadings; the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 22); Defendant's Objections to the Magistrate Judge's M&R, (Doc. No. 23); Plaintiff's Objections to the Magistrate Judge's M&R, (Doc. No. 24); Plaintiff's Response to Defendant's Objections to the Magistrate Judge's M&R, (Doc. No. 26); and Defendant's Response to Plaintiff's Objections to the Magistrate Judge's M&R, (Doc. No. 28).

## I. BACKGROUND

Plaintiff Arcangela Mazzariello ("Plaintiff") initiated this action with the filing of a "Verified Complaint" (Doc. No. 1-1) (the "Complaint") in the Superior Court of Mecklenburg County, North Carolina, Case No. 16-CVS-20211, on November 7, 2016. "Defendant's Notice Of Removal," (Doc. No. 1), was filed by Defendant Atlantic Coast Waterproofing, Inc. ("Atlantic Coast") on December 8, 2016. On December 15, 2016, Defendant Atlantic Coast filed its "Answer And Affirmative Defenses." (Doc. No. 6).

On January 18, 2017, Plaintiff filed her "Amended Complaint." (Doc. No. 14). The Amended Complaint asserts causes of action against Atlantic Coast for: (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII"); (2) sex discrimination in violation of Title VII; (3) age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"); (4) violation of North Carolina Retaliatory Employment Discrimination Act ("NC REDA"); (5) wrongful discharge in violation of public policy (sex discrimination); (6) wrongful discharge in violation of public policy (race discrimination); (7) wrongful discharge in violation of public policy (age discrimination); (8) wrongful discharge in violation of public policy against employing illegal aliens; and (9) punitive damages under North Carolina common law. (Id. at 12–20). In addition, the Amended Complaint asserts causes of action against Defendant Federico Jaramillo ("Jaramillo"), individually, for: (1) intentional infliction of emotional distress ("IIED"); (2) assault; (3) battery; and (4) punitive damages under North Carolina common law. (Id. at 20–23).

In support of her claims against Defendant Jaramillo, Plaintiff alleges the following facts in her Amended Complaint. Plaintiff is a Caucasian female over the age of forty (Id. at ¶ 14) who was hired by Atlantic Coast in 2014 for the position of CEO (Id. at ¶¶ 15–16). Plaintiff's duties as CEO included, but were not limited to: navigating an IRS audit of Atlantic Coast; reducing financial waste; and bringing Atlantic Coast into compliance with local, State, and Federal laws and regulations. (Id. at ¶ 20). Initially, Plaintiff reported only to Adan Jaramillo, who Plaintiff alleges was the "official" owner of Atlantic Coast. (Id. at ¶ 17). Defendant Jaramillo initially worked on jobsites and reported to Plaintiff. (Id. at ¶ 18). Upon information and belief, Plaintiff alleges Defendant Jaramillo does not have legal residency and therefore was not listed as an "official" owner of Atlantic Coast. (Id. at ¶ 19).

Plaintiff's relationship with Defendants began to sour when Plaintiff discovered Defendant Jaramillo was diverting company money for personal use. (Id. at ¶ 27–28). When Plaintiff confronted Defendant Jaramillo about his misuse of company funds, Defendant Jaramillo bragged that he took money from the company on a regular basis and told Plaintiff she was not smart enough to figure out how he was doing it. (Id. at ¶ 29).

Over time, Defendant Jaramillo assumed more authority within Atlantic Coast and changed the organizational structure so that Plaintiff reported to both Defendant Jaramillo and Adan Jaramillo. (Id. at ¶ 30). Defendant Jaramillo made it well known to others that he disliked Plaintiff for many reasons, including but not limited to Plaintiff's: close audits of the company's finances; insistence on compliance with local, State, and Federal laws; refusal to certify immigration compliance; not being of Latin descent; being "too old"; and being a female. (Id. at ¶ 31). Additionally, Defendant Jaramillo told co-workers that Plaintiff would not succeed because she was "too old" and a "gringa." (Id. at ¶ 59). Plaintiff told Defendants that she found this term offensive and insisted they stop, but Defendants persisted. (Id. at ¶¶ 61–63).

On several occasions, Defendant Jaramillo stormed into Plaintiff's office and banged on Plaintiff's desk, screaming in her face threats that "he would do whatever he wanted." (Id. at ¶ 32). During these confrontations, Defendant Jaramillo would thrust his face so close to Plaintiff's that when he yelled at her, spit from his mouth would spatter her face. (Id. at ¶ 33). Plaintiff expressed her disapproval of this behavior directly to Defendant Jaramillo and he refused to stop. (Id. at ¶ 35). Plaintiff alleges these confrontations terrified her and caused her to fear that Defendant Jaramillo would cause bodily harm to her and her coworkers. (Id. at ¶ 34).

In order for Atlantic Coast to qualify for government contracts, Plaintiff had to verify that no illegal aliens owned any part of Atlantic Coast. (Id. at ¶ 44). Plaintiff reported her concerns to

Adan Jaramillo about providing this verification because she doubted the immigration status of Defendant Jaramillo, who had become an owner of Atlantic Coast. (Id. at ¶ 45). Defendants took no actions to address Plaintiff's concerns, but Defendant Jaramillo changed Plaintiff's job description and required her to work on job sites four days a week. (Id. at ¶ 46).

On November 4, 2015, Plaintiff was injured at work while helping another employee clean a floor mat. (Id. at ¶ 48). Defendant Atlantic Coast and Defendant Jaramillo told Plaintiff she could not file a worker's compensation claim because "points would be assessed," but Plaintiff insisted on reporting the claim anyways. (Id. at ¶ 52).

On November 24, 2015, Plaintiff informed Adan Jaramillo that she could not certify payroll because some employees did not have proper documentation establishing both employment authorization and identity. (Id. at ¶ 55). Additionally, Plaintiff informed Adan Jaramillo that she was no longer comfortable signing the affidavits required for Atlantic Coast to qualify for government contracts. (Id. at ¶ 57). The next day, November 25, 2015, Defendants terminated Plaintiff from Atlantic Coast. (Id. at ¶ 64).

"Defendant Federico Jaramillo's Renewed Motion To Dismiss," (Doc. No. 15), and "Memorandum Of Law In Support…," (Doc. No. 16), were filed on January 18, 2017. Defendant Jaramillo seeks dismissal of all Plaintiff's claims against him pursuant to Fed. R. Civ. P. 12(b)(6). See (Doc. Nos. 15 and 16). "Plaintiff's Memorandum Of Law In Response…," (Doc. No. 20), was filed February 7, 2017; and "Defendant Federico Jaramillo's Reply In Support…," (Doc. No. 21), was filed on February 14, 2017. Defendant Jaramillo's motion is ripe for review.

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A)

and (B). The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. at § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). De novo review is not required by the statute when an objecting party makes only general or conclusory objections that do not direct the court to a specific error in the magistrate judge's recommendations. Orpiano v. Johnson, 687 F.2d 44 (4th Cir. 1982). Further, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby, 178 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly this Court has conducted a careful review of the Magistrate Judge's M&R.

The standard of review for a motion to dismiss is well known and well-stated in the M&R. It tests "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means allegations that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 545 (quoting Copperweld Corp. v. Independence Tube Corp., 467

U.S. 752, 775 (1984)). Additionally, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (quoting Twombly, 550 U.S. at 555-56). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 (1986). Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed. Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Academy Alumni Ass'n, Inc., 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

Plaintiff's complaint alleges four causes of actions under North Carolina common law against Defendant Jaramillo: (1) IIED; (2) Assault; (3) Battery; and (4) Punitive Damages. (Doc. No. 14 at 20–23). Defendant Jaramillo argues that each should be dismissed: (1) the IIED claim because Plaintiff failed to allege facts showing Defendant Jaramillo exhibited "extreme and outrageous conduct" that caused Plaintiff "severe emotional distress;" (2) the assault claim because Plaintiff failed to allege facts showing Defendant Jaramillo displayed an offer of violence that would give rise to a reasonable apprehension of imminent injury; (3) the battery claim because Plaintiff failed to allege facts showing Defendant Jaramillo intentionally spit on Plaintiff; and (4) the punitive damages claim North Carolina does not recognize punitive damages as a standalone claim. (Doc. No. 16 at 2–11).

The Magistrate Judge recommended that Defendant Jaramillo's Motion to Dismiss be granted regarding the IIED and punitive damages claims, and denied regarding the assault and battery claims. Defendant Jaramillo objected to the Magistrate Judge's recommendations

regarding the assault and battery claims. (Doc. No. 23 at 1). Plaintiff objected to the recommendation that the IIED claim be dismissed, but did not object to the recommendation that the separately pled punitive damages claim be dismissed, provided that the dismissal is without prejudice to her later seeking punitive damages, if appropriate. (Doc. No. 24 at 1). Therefore, Defendant Jaramillo's Motion regarding Plaintiff's separately-pled punitive damages claim (Thirteenth Cause of Action) will be granted without prejudice to Plaintiff recovering punitive damages later, if appropriate.[1] The Court will address Plaintiffs' remaining claims against Defendant Jaramillo in turn.

A. <u>Intentional Infliction of Emotional Distress</u>

Liability arises under the tort of IIED "when a defendant's 'conduct exceeds all bounds usually tolerated by decent society' and the conduct 'causes mental distress of a very serious kind.'" <u>Dickens v. Puryear</u>, 276 S.E.2d 325, 331 (N.C. 1981) (quoting <u>Stanback v. Stanback</u>, 254 S.E.2d 611, 622 (N.C. 1979)). The elements of this action are: (1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress. <u>Waddle v. Sparks</u>, 414 S.E.2d 22, 27 (N.C. 1992) (citing <u>Dickens</u>, 276 S.E.2d at 325).

The Court agrees with the Magistrate Judge that Plaintiff has failed to allege facts showing severe emotional distress. The North Carolina Supreme Court defines severe emotional distress as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." <u>Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.</u>, 395 S.E.2d 85, 97 (N.C. 1990). Although an actual diagnosis by a

---

[1] It is well established that punitive damages cannot exist as an independent cause of action under North Carolina law. <u>Hawkins v. Hawkins</u>, 400 S.E.2d 472, 474 (N.C. App. Ct. 1991).

medical professional is not always required or necessary, <u>Soderlund v. Kuch</u>, 546 S.E.2d 632, 639 (N.C. Ct. App. 2001), a plaintiff must allege she has suffered more than mere temporary fright, disappointment, or regret. <u>Johnson</u>, 395 S.E.2d at 91.

Here, Plaintiff alleges that the repeated confrontations with Defendant Jaramillo terrified Plaintiff, causing her to fear that Defendant Jaramillo would act violently against her or her coworkers. (Doc. No. 14 at ¶ 34). As upsetting as these interactions may have been, Plaintiff's allegations do not rise to the level of severe emotional distress. Therefore, Defendant Jaramillo's Motion to Dismiss is granted regarding Plaintiff's IIED claim (Tenth Cause of Action).

B. <u>Battery</u>

North Carolina follows the basic common law rules of battery, as found in the Restatement and W. Prosser's <u>Handbook of the Law of Torts</u>. <u>Woodson v. Rowland</u>, 407 S.E.2d 222, 229 (N.C. 1991); <u>Dickens</u>, 276 S.E.2d at 331. The essential elements of battery are intent, harmful or offensive contact, and causation. <u>Redding v. Shelton's Harley Davidson, Inc.</u>, 534 S.E.2d 656, 659 (N.C. Ct. App. 2000). "A bodily contact is offensive if it offends a reasonable sense of personal dignity." <u>Andrews v. Peters</u>, 330 S.E.2d 638, 641 (N.C. Ct. App. 1985) (quoting Restatement (Second) of Torts § 19 (1965)).

A plaintiff is required to prove that the defendant had the "intent to act, i.e. the intent to cause harmful or offensive contact . . . ." <u>Britt v. Hayes</u>, 541 S.E.2d 761, 762 (N.C. Ct. App. 2001). Intent, however, "is broader than a desire to bring about physical results." <u>Woodson</u>, 407 S.E.2d at 228 (quoting W. Prosser, <u>Handbook of the Law of Torts</u> § 8 (4th ed. 1971)). It is a general concept of tort liability that "[o]ne who intentionally engages in conduct knowing that particular results are substantially certain to follow also intends the results for purposes of tort liability." <u>Id.</u> at 229 (quoting Restatement (Second) of Torts § 8A and comment b (1965)).

Substantial certainty is more than a possibility or substantial probability, but less than actual certainty. See id. at 231–32 (finding an employer was substantially certain a ditch would collapse and injure his employees, where the employer ordered his employees to continue digging despite his knowledge of the risks, the lack of safety procedures, and the worksite's numerous safety violations).

Here, Plaintiff has pled sufficient facts to warrant the inference that Defendant Jaramillo either intended to spit in Plaintiff's face, or knew it was substantially certain. Plaintiff alleges that on several occasions Defendant Jaramillo, yelling threats at her, would thrust his face so close to Plaintiff's that spit from his mouth would spatter her face. (Doc. No. 14 at ¶¶ 32–34). Additionally, Plaintiff alleges that Defendant Jaramillo continued this behavior even after Plaintiff directly expressed her disapproval. (Doc. No. 14 at ¶ 35). Like the employer in Woodson, Defendant Jaramillo was aware of the risk. As a fully competent adult, he is presumed to have known that it is not uncommon to spit when yelling. Moreover, Plaintiff's request that he stop the discussed conduct should have given him additional awareness of his conduct.

Lastly, this Court finds it more than plausible that Plaintiff's sense of personal dignity was offended when Defendant Jaramillo's spit spattered her face. Therefore, Defendant Jaramillo's Motion to Dismiss is denied regarding Plaintiff's battery claim (Twelfth Cause of Action).

C. Assault

Like battery, North Carolina follows the basic common law rules of battery as found in the Restatement and W. Prosser's Handbook of the Law of Torts. Dickens, 276 S.E.2d at 331. The elements of assault are intent, offer of injury, reasonable apprehension, apparent ability, and imminent threat of injury. Wilson v. Bellamy, 414 S.E.2d 347, 357 (N.C. Ct. App. 1992) (quoting Hawkins v. Hawkins, 400 S.E.2d 472, 475 (N.C. Ct. App. 1991)). The requisite intent for an assault

is the intent to cause apprehension of an imminent offensive or harmful contact without actually striking him. Britt, 541 S.E.2d at 762. The apprehension created must be one of imminent contact, which means there will be no significant delay. Dickens, 276 S.E.2d at 331 (citing Restatement (Second) of Torts § 29 (1965)).

Defendant Jaramillo in his Objections to the Magistrate Judge's M&R states: "Plaintiff's Amended Complaint does **not** allege that Defendant Jaramillo threatened or attempted to harm her physically, as needed to sustain a cause of action for assault." (Doc. No. 23 at 11) (emphasis in original). This Court disagrees.

In her Amended Complaint, Plaintiff states: "Defendant Federico Jaramillo intentionally displayed force and violence, threatening Plaintiff with imminent bodily injury by, among other things, storming into Plaintiff's office, banging on her desk, and screaming in her face." (Doc. No. 14 at ¶ 144). Plaintiff also alleges that during these encounters, Defendant Jaramillo would scream in her face "threats that he would do whatever he wanted." (Id. at ¶ 32). As a result, Plaintiff alleges this conduct caused her "to have a reasonable apprehension that Defendant Federico Jaramillo would make harmful or offensive contact with Plaintiff." (Id. at ¶ 145). These allegations, taken as true, satisfy every element of an assault claim.

"While words alone may not constitute assault, words may render the actor liable if, in combination 'with other acts or circumstances, they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person.'" Johnson v. Bollinger, 356 S.E.2d 378, 381 (N.C. Ct. App. 1987) (quoting Restatement (Second) of Torts § 31). The plaintiff's complaint in Johnson alleged that the defendant "approached plaintiff in an angry and threatening manner while wearing a pistol. Defendant shook his hand in plaintiff's face and said in a loud voice, 'I will

get you.'" Id. at 382. The court held that these allegations satisfied every element of an assault claim, and were sufficient to survive a motion to dismiss. Id.

Defendant Jaramillo nevertheless argues that this Court in Boggess v. Roper "expressly held that fist-banging while using threatening language does not convert 'mere threats' into an actionable assault." (Doc. No. 23 at 11). The issue in Boggess, however, was not whether fist-banging and yelling is per se an actionable assault, but whether the defendant's conduct was intended to cause a reasonable apprehension of imminent harmful contact. No. 3:04-CV-00092, 2006 WL 2569206, at *13 (W.D.N.C. Sept. 1, 2006).

Defendant Jaramillo's conduct is more akin to the conduct in Johnson than in Boggess. Like the defendant in Johnson, Defendant Jaramillo allegedly stormed into Plaintiff's office on several occasions. (Doc. No. 14 at ¶¶ 32; 144). Next, just as the defendant in Johnson waived his hand in the plaintiff's face while saying "I will get you" in a loud voice, Defendant Jaramillo on several occasions allegedly banged on her desk, thrust his face in Plaintiff's face, and screamed threats that "he would do whatever he wanted" as spit spattered Plaintiff's face. (Doc. No. 14 at ¶¶ 32–33; 144). These words and actions would undoubtedly put a reasonable person in apprehension of an imminent harmful contact.

Additionally, unlike the defendant in Boggess, Defendant Jaramillo's conduct satisfies the intent element of assault. The relevant conduct complained of in Boggess involved the defendant "slamming his hand and saying, 'Damn it Carrie, that's not what I told you to say.'" Boggess, 2006 WL 2569206, at *13. Here, Defendant Jaramillo not only stormed into Plaintiff's office and banged his fist, but screamed that he would do whatever he wanted so close to Plaintiff's face that spit allegedly spattered her face. (Doc. No. 14 at ¶¶ 32; 144). Plaintiff has sufficiently alleged that Defendant Jaramillo intended to put Plaintiff in apprehension of imminent harmful contact.

Accordingly, Defendant's Motion to Dismiss is denied regarding Plaintiff's assault claim (Eleventh Cause of Action).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's M&R, (Doc. No. 22), is **ADOPTED**; and

2. Defendant Jaramillo's Motion to Dismiss, (Doc. No. 15), is **GRANTED in part and DENIED in part**. Specifically, Defendant Jaramillo's Motion is **GRANTED** as to Plaintiff's Tenth and Thirteenth Causes of Action, and those Causes of Action are **DISMISSED**. Defendant Jaramillo's Motion is **DENIED** as to Plaintiff's Eleventh and Twelfth Causes of Action, and those Causes of Action may proceed.

Signed: September 8, 2017

Robert J. Conrad, Jr.
United States District Judge